**William A. JOHNSON, Sr., Appellant,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Appellee.**

No. 77–1418.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1978.

Decided Feb. 1, 1979.

Hazel A. Straub, Charleston, W. Va. (Franklin W. Kern, Charleston, W. Va., on brief), for appellant.

James S. Arnold, Asst. U. S. Atty., Charleston, W. Va. (John A. Field, III, U. S. Atty., and Steven L. Jones, Sp. Asst. U. S. Atty., Charleston, W. Va., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and BUTZNER and HALL, Circuit Judges.

K. K. HALL, Circuit Judge:

William A. Johnson [hereinafter "claimant"] appeals from a decision of the district court which sustained the finding of the Secretary of Health, Education and Welfare, that he was substantially and gainfully employable. The record is uncontradicted that claimant's physical disability precludes his returning to his former occupation, underground coal mining; thus the burden shifted to the Secretary to demonstrate that "claimant, given his age, education and work experience, has the capacity to perform a specific job which exists in the national economy." *Taylor v. Weinberger,* 512 F.2d 664, 666 (4th Cir. 1975).

Our scope of review under 42 U.S.C. § 405(g) is limited to a determination of whether the Secretary's decision is supported by substantial evidence. We reverse.

At the time of the administrative hearing in 1974 claimant was 48 years old. He had a sixth grade education and had engaged in heavy manual labor all of his working life.[1] In May 1972 claimant injured his back at work. He continued working for several more weeks but had to quit when his back condition worsened.

At the hearing claimant, who appeared without counsel, submitted medical reports in which four different doctors agreed that he suffered from chronic lumbosacral strain. He was treated conservatively with

---

1. During most of claimant's working years he was an underground coal miner, hand loading and operating a shuttle car. For a short period of time he serviced engines for a railroad company.

medication and a back brace. Claimant testified that he suffered from back pain which was not severe but was a "constant irritation." He stated that he ordinarily had pain in his back, which from time to time spread down his legs. He walked with the aid of a cane. Claimant testified that he regularly took medications, including nitroglycerin and tranquilizers. He also suffered from chest pain and had pneumoconiosis. Claimant's wife testified that in addition he had severe headaches several times a month which lasted 2-3 days.

A vocational expert testified that a man of claimant's age, education and work background could transfer his skills to the operation of moving machinery, such as dump trucks, garbage trucks, delivery trucks, taxicabs or school buses. She also opined that he could operate laundry machines. Although claimant in his own words attempted to ask her the usual hypothetical question—whether *assuming the existence of the claimed disability* he could perform these jobs—the administrative law judge frustrated his attempts and the question was never asked or answered.[2] (Tr. 47–49) Significantly, however, the ALJ did engage the vocational expert in the following colloquy:

> ALJ: Now . . . can you tell me first the types of work [claimant] has been involved in in the past. And give me some idea, as to each of those types of work, what the functional requirements are. And then, also, give me some idea of whether there are other jobs which would utilize the same functional types of capacities that he might

be utilizing in this particular—in his private work.

> VE: . . . His skills could be transferred into other types of operation of moving machinery, such as trucks—either heavy-duty trucks, dump trucks or light trucks. Also to that of a taxi driver, school bus driver. Or the industrial trucks, such as the forklifts, that are used inside the plants to remove material. Or as a motor-route newspaper carrier, crane operator or driving garbage collector trucks or cement mixer trucks, road graders. . . . However, there are other machine operating jobs in industries that are easily learned. For example, in the laundries we have the washers, the extractors and the tumblers, which are stationary machines that are operated by push buttons. They turn valves and they observe the machines. . . .

> ALJ: . . . I've got to, in other words, make a decision here based on all this evidence as to what this gentleman can and can't do from the standpoint of his physical problems that he has. . . . And if you could give me some . . . of the requirements to do those types of jobs then maybe I can apply what I've got here to that and then maybe come up with a better conclusion.

> VE: Well, the moving machinery operating, such as the trucks and the buses and the forklifts and so on, would require the use of the hands and arms and lower extremities in to pressing pedals and so on. Generally they sit a

---

**2.** *See Cornett v. Califano,* 590 F.2d 91 at 93 (4th Cir. 1978).

A suggested proper hypothetical question appears in the Bureau of Hearings and Appeals Handbook, Interim Circular # 102:

\* \* \* \* \* \*

10. And so that [claimant] may understand the bases of your testimony, your opinions expressed here will concern themselves with what work he/she can do, if anything, when you consider his/her age, education and work experience, and his/her impairments which I shall give you as assumed findings.

\* \* \* \* \* \*

15. Now, hypothetically considering an individual whose age is ——, with education, training and work experience as in the present case, and assuming I should find that such person is (or was) suffering from [the claimed disability], is there any work such individual could perform on a sustained basis?

In the present case claimant could not and the ALJ did not pose the hypothetical. Manifestly, had the ALJ done so, the vocational expert would have answered Question 15 in the negative and claimant would have been awarded benefits. *See* pages 2 & 3, *infra.*

great deal of the time in operating those. *But they do have to get in and out or on and off those machines. Sometimes they have to load and unload, which would require lifting, stooping, bending, carrying.*

These jobs that I listed in the laundry would require *standing, walking and lifting* the wash in and out of the machines. And there'd be no sedentary type of job—strictly sedentary—in any of these, where you could sit possibly 6 or 8 hours. *It would require body activity—considerable body activity and exertion.*

(Tr. 42–45) (emphasis added).

The ALJ found that "claimant is unable to work in a dusty or polluted atmosphere [because of his pneumoconiosis] or in jobs requiring the gross body movements of reaching, lifting, stooping, squatting or the like. . . ." He nonetheless went on to find that "[claimant] is not precluded from the operation of motor vehicles, which would include light delivery route work. . . ."

The Appeals Council affirmed the ALJ without addressing this contradiction; namely, that while the ALJ found that claimant could not do jobs requiring reaching, lifting, stooping, squatting and the like, and the vocational expert testified that every one of the suggested jobs required those bodily movements, the ALJ held that claimant could perform the jobs.[3]

This determination is inherently illogical and mandates reversal. The record conclusively shows that claimant is physically precluded from performing any work which he is vocationally qualified to do. Since the Secretary has not shown good cause to prolong this litigation, *see Taylor v. Weinberger,* 512 F.2d 664, 669 (4th Cir. 1975), the district court is instructed to enter judgment for the claimant.

---

**3.** At oral argument on appeal, counsel for the Secretary was still unable to rationalize this result. Instead, counsel focused on two facts alleged to be significant: first, that claimant had driven 40 miles to the hearing, and second, that claimant had gained about 5 pounds during the 2½ years since his injury occurred. Why these facts should be considered signifi-

REVERSED WITH INSTRUCTIONS THAT JUDGMENT BE ENTERED FOR PLAINTIFF.

---

cant is somewhat mysterious. There is nothing in the record to indicate that claimant, who resided in rural West Virginia, had any alternate means of transportation to get to the hearing, or that he could sustain such activity. And we find nothing untoward in the slight weight gain following claimant's retirement from his usual heavy physical labor.