**Ralph H. VAN HUSS, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 81–0153–A.**

United States District Court, W.D. Virginia, Abingdon Division.

Sept. 30, 1983.

Isaac St. Clair Freeman, Marion, Va., for plaintiff.

Thomas J. Bondurant, Asst. U.S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

Plaintiff has filed this action challenging the final decision of the Secretary of Health and Human Services denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g), as amended. As reflected by the memoranda and argument submitted by the parties, the issues before this court are whether the Secretary's final decision is supported by "substantial evidence" and if it is not, whether plaintiff has met the burden of proof as prescribed by and pursuant to the Act. Stated briefly, "substantial evidence" has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. *Richardson v. Perales,* 402 U.S. 389, 400, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

In an opinion which now stands as the final decision of the Secretary, the Social Security Administration's Appeals Council found that plaintiff was not under such a disability as to establish entitlement to benefits under the Act. While the Appeals Council found that plaintiff suffers from different impairments,[1] the Council concluded, in adopting the recommended decision of an Administrative Law Judge (ALJ), that the conditions were not so severe, either singly or in combination, as to constitute a disability within the meaning of the Act, 42 U.S.C. § 423.

The plaintiff, Ralph H. Van Huss, was born on June 10, 1947, and is currently thirty-six years of age; he has a seventh grade education, and his prior work experience has been primarily as a self-employed brick mason and block contractor, which is a skilled job, requiring claimant to supervise one to three men. Plaintiff's work activity involved heavy lifting and a great deal of climbing, stooping and bending. Due to severe medical impairments in his musculoskeletal system, claimant is unable to perform in his relevant vocational field. Plaintiff alleges onset of disability beginning on May 6, 1978, which he contends has continued until the present time. By memorandum opinion filed February 2, 1982, and order entered thereon, the court remanded the case to the Secretary because of a perceived inappropriate use of the "grids" contained in the medical-vocational guidelines in Appendix 2. 20 C.F.R. Part 404, subpt. P, app. 2, §§ 200.00–204.00. Upon remand, a supplemental ALJ's hearing was conducted, and the ALJ made a recommended decision to the Appeals Council, in which he found that Mr. Van Huss was not disabled based upon the evidence before him, and also based upon a directed finding under Regulation § 404.1569 and Rules 201.23 and 202.16, respectively, and Table Nos. 1 and 2. The ALJ requested that a vocational expert (VE) appear and testify at the supplemental hearing; and he based his recommended decision upon the testimony of the VE as well as the "grids" contained in the medical-vocational guidelines of Appendix 2. (*See* Tr. 132; Findings 8 & 9). At the supplemental ALJ's hearing, psychiatric evidence was introduced, which led the ALJ to find that, in addition to his musculoskeletal difficulties, plaintiff had emotional

---

1. Plaintiff experiences musculoskeletal difficulties, which cause exertional impairments, and emotional problems of a mild to moderate nature, which constitute a non-exertional impairment and preclude Van Huss from performing his prior arduous work.

problems of a mild to moderate nature. (*See* Tr. 132; Finding 2). The Appeals Council, by order entered on December 15, 1982, adopted the findings and conclusions set forth in the ALJ's recommended decision. (Tr. 121).

The most significant medical evidence in the record comes from his treating physician, Dr. V.A. Motley; Dr. Melvin L. Heiman, an orthopedic surgeon, who saw and treated Mr. Van Huss in consultation with Dr. Motley and would, therefore, be considered a treating physician; Dr. Robert T. Strang, an orthopedic surgeon, who saw Mr. Van Huss in consultation at the request of the Secretary's agents; Dr. Catherine W.R. Smith, a psychiatrist, who saw plaintiff in consultation at the request of his attorney; and Dr. Herbert H. Bockian, a psychiatrist, who saw plaintiff in consultation at the request of the Secretary's agents. The pertinent medical evidence will be reviewed and discussed hereinafter, as well as the pain, psychiatric, vocational and procedural aspects of the case.

The court perceives at least three errors of law and/or fact or mixed errors of law and fact in plaintiff's case. They are: (I) the inappropriate use of the "grids" or medical-vocational guidelines due to the presence of both exertional and non-exertional impairments; (II) The improper questioning of the VE by the ALJ, which amounts to a failure on his part to fully and properly develop the evidence as required by the Secretary's regulations and case law precedent; and (III) The failure of the ALJ to fully and adequately deal with the pain issue, presented by plaintiff's testimony and the medical evidence.

## SUMMARY OF MEDICAL EVIDENCE

The court first must review the medical evidence, which, in pertinent part, is summarized as follows:

Dr. Motley, plaintiff's treating physician, has filed two medical reports in plaintiff's case. On October 3, 1980, he reported as follows:

The above-named patient does not have any history of hypertension, but *he was seen in the office on February 26, 1980 complaining of numbness of his hands and stated he felt like he was going to pass out.* Physical examination at that time was normal including a blood pressure of 140/80. *My impression was that Mr. VanHuss [sic] was suffering from a hyperventilation syndrome which produces symptoms such as he described to me. He was placed on a tranquilizer and advised as to the cause of his symptoms. I have not seen Mr. VanHuss [sic] since that date.*

However, *on June 19, 1980 he was seen in this office by one of my associates with a complaint of upper abdominal pain. The impression at that time was probable ulcer and appropriate treatment for this was prescribed.* No x-rays have been made to further delineate the cause of his abdominal pain.

(Tr. 111; emphasis added). On February 26, 1980, in a report to the State Disability Determination Services, which was received by this Agent of the Secretary on April 10, 1980 (*See* Tr. 180), but which was not made part of the administrative transcript until the second ALJ's hearing, for some reason not explained in the record; Dr. Motley reported the following:

*Mr. VanHuss [sic] has a history of low back discomfort for some years duration. He was treated by Dr. Melvin L. Heiman, an orthopedist of Abingdon, for this condition. I understand that surgery was done last year and would suggest that you obtain that information from Dr. Heiman.*

*With regard to your question concerning hyperventilation, I saw Mr. VanHuss [sic] on one occasion for this 2/26/80. Tranxene 7.5(?) was prescribed, and I have not seen him subsequently.*

(Tr. 178; emphasis added). Dr. Motley opined hyperventilation syndrome and recurrent low back syndrome. (*See* Tr. 181).

Even though Dr. Motley is plaintiff's personal treating physician, Dr. Heiman was the principal treating physician, because he saw Van Huss from a time

shortly after his injury in an automobile accident in May of 1978, through back surgery on May 8, 1979, necessitated by Van Huss' injuries. Dr. Heiman filed numerous reports in the record, including office notes through February 15, 1980. Dr. Heiman, plaintiff's treating surgeon, has filed a large part of the medical evidence in the record. His reports indicate that he began treating plaintiff for an injury to his back in August of 1978 (*See* Tr. 88). In a letter bearing date of August 15, 1978, Dr. Heiman reported to Dr. Motley, *inter alia,* as follows:

> Xrays: On xrays which you kindly sent to our office it is suggested that he has a bilateral spondylosis at L–5, S–1 although the defects are difficult to see. There is no spondylolithosis, no mass lesions are identified. S–1 joints appear to be clear. It is very possible that Mr. VanHuss [sic] suffered the traumatic spondylosis at the L–5, S–1 area which has retarded his recovery. I advised him in the use of a brace and Naprosyn in an aid to speed his recovery. If indeed he did suffer a fracture in this area I would expect it to take another two to three months for him to recover fully and be able to return to work. *At times this fracture will not heal properly leaving a fibrous union and continued symptoms which at times is amenable to surgical treatment.* I would think that his chances of healing this area are good. I plan to recheck him again in three weeks and get repeat oblique views of his lumbosacral spine.

(Tr. 88; emphasis added). It is significant that Dr. Heiman, on his first examination of Van Huss, indicated that the back fusion surgery, which was performed on May 8, 1979, was, perhaps, likely to become necessary. After his initial examination of Van Huss, Dr. Heiman continued to see him and filed reports on office notes on September 5, 1978 (Tr. 89–90); October 17, 1978 (Tr. 91); January 4, 1979 (Tr. 92); in the hospital at Abingdon, Virginia, April 18, 1979 through April 20, 1979 (Tr. 93), at which time Dr. Heiman opined a final diagnosis of "post traumatic bilateral spondyloysis, L5–S1 *causing continued disability*" (Tr. 93;

emphasis added); and again in the hospital at Abingdon, Virginia on May 7, 1979 through May 15, 1979, during which period a surgical procedure denoted a posterolateral fusion of between L5–S1 was performed on May 8, 1979; in the discharge summary, Dr. Heiman said, *inter alia:*

FINAL DIAGNOSIS:

> Bilateral spondylolysis, L5–S1, post-traumatic *with persistent low back* discomfort, refractory to nonoperative care. . . .

> BRIEF HISTORY: *This 31 year old mane [sic] was admitted after an extended course of nonoperative management for continued low back pain.*

> Discharge instructions: Use brace when up; return to my office in two weeks from date of surgery for suture removal. Medication: Empirin No. 3, no. 30 for occasional pain. *Short-term disability—six months; long-term disability—indeterminate.*

(Tr. 96; emphasis added). Dr. Heiman filed further reports and office notes covering numerous visits from September 26, 1978 through January 4, 1980; and a last office note of February 15, 1980. In summary, these office notes cover some seventeen additional office visits and examinations of Van Huss by Dr. Heiman. In summary, the reports and office notes disclose a pattern of the doctor's encouraging his patient to attempt to work and of Van Huss' attempts thereat, which were frustrated due to recurrent pain and weakness. The ALJ, in developing the claim, never elicited any opinion from Dr. Heiman as to plaintiff's residual functional capacity, nor did the ALJ ask him to furnish a physical capacities evaluation; this failure on the ALJ's part is contrary to the Secretary's regulations, which recognize the treating physician as the primary and best source of medical evidence. *See generally,* 20 C.F.R. §§ 404.-1512–1517. Controlling case law also treats the evidence of treating physicians as entitled to greater weight than other examining or non-examining sources. *Mitchell v. Schweiker,* 699 F.2d 185, 187 (4th Cir.1983); *Oppenheim v. Finch,* 495 F.2d 396, 308 (4th

Cir.1974); *Vitek v. Finch,* 438 F.2d 1157, 1160 (4th Cir.1971).

Dr. Robert T. Strang, an orthopedic surgeon of Kingsport, Tennessee, saw Van Huss in consultative examination at the behest of the ALJ through arrangements made by the Secretary's agents, on December 11, 1980. Dr. Strang reported, *inter alia:*

> On motor testing, the patient gave way on all muscles tested including the tibialis anteior, the extensor haluscis longus, the tibialis posterior, the peroneal muscles, the gastrocnemius soleus group, hamstrings and rectus muscle. The patient did walk, however, with a normal gait. There was no list or antalgic component.
>
> \*   \*   \*   \*   \*   \*
>
> The patient's *subjective complaints* are continuing pain and discomfort in the lower back as well as occasional numbness in the entire lower extremities *could not adequately sustained with objective findings.* It is thought that the patient should be able to lift approximately ten to twenty pounds on a frequent basis. *He should be able to walk as much as possible as well as sit for approximately four hours a day.* There is no impairment in the upper extremities. *Bending in the back, however, should probably be peformed [sic] only occasionally, or at most infrequently due to the patient's subjective problems.*

(Tr. 114; emphasis added). Dr. Strang filed an unexecuted "Joint Ranges of Motion" form with his report and a physical capacities evaluation, which indicates that Van Huss cannot sit for more than four hours in an eight-hour workday (Tr. 116). This finding and opinion by Dr. Strang is very significant vocationally. Since it is the only physical capacity evaluation in the record, and because it is the opinion upon which the ALJ most heavily relied, the ALJ's recommended decision, which was adopted as the Secretary's final decision in plaintiff's case, is not supported by "sub-stantial evidence," as will be discussed in the vocational evidence section hereinafter.

■ Dr. Catherine W.R. Smith, a psychiatrist of Abingdon, Virginia, saw Van Huss in consultative examination at the behest of his attorney (Tr. 188). Van Huss was seen in consultative examination for the Secretary by Dr. Herbert H. Bockian, a psychiatrist of Bristol, Tennessee (Tr. 191). Dr. Bockian and Dr. Smith each found that Van Huss has a mild to moderate psychiatric impairment. Dr. Bockian opined a "Prognosis: Guarded for any further improvement" (Tr. 194). Dr. Smith also opined a guarded prognosis for Van Huss (Tr. 90). The psychiatric evidence is important from both a vocational and procedural standpoint.[2]

# I

## INAPPROPRIATE USE OF "GRIDS" OR MEDICAL-VOCATIONAL GUIDELINES

## AND

# II

## IMPROPER QUESTIONING OF VE BY ALJ

■ A review of the transcript of the second ALJ's hearing, held on April 29, 1982 (Tr. 141), discloses that in questioning the VE, the ALJ went far beyond his duty of fully developing the evidence, and, by his manner of examination, in effect, mandated answers that were favorable to the Secretary, *ergo,* unfavorable to the plaintiff. (*See* Tr. 165–171). Even though the ALJ did not completely base his decision upon the "grids" or medical-vocational guidelines, his questioning of the VE injected them (*See* Tr. 125); and the court perceives this to be contrary to the controlling precedent in this district and circuit. It is quite clear in this circuit that the medical-vocational guidelines (20 C.F.R. Pt. 404, subpt. P, app. 2, § 200.00(e), commonly called the "grids")

---

**2.** To the extent that non-exertional impairments further limit the range of jobs available to the claimant, the "grids" may not be relied upon to demonstrate the availability of alternative work activities. *Grant v. Schweiker, infra,* at Page 166.

cannot be applied mechanically to compel a conclusion of non-disability where both exertional and non-exertional limitations are present. *Gory v. Schweiker,* 712 F.2d 929, 930–931 (4th Cir.1983); *Grant v. Schweiker,* 699 F.2d 189, 192 (4th Cir.1983); *Roberts v. Schweiker,* 667 F.2d 1143, 1145 (4th Cir. 1981). The ALJ improperly injected the "grids" into his examination of the VE, and, in effect, mandated answers from the VE that rendered the vocational evidence without probative value when the following question was propounded to the VE:

> Q. Dr. Hankins, let's assume that I find on account of the claimant's impairments, the resulting supplementology [sic] including pain. The claimant's residual functional capacity would be limited to lap [sic] (light) work. That he is currently 34 years of age. That his educational level is limited. *Based on these factors, the current rules and regulations would direct a conclusion that the claimant is not disabled.* Also assume that I find that the claimant is further limited because of his back impairment he could only perform occasional bending, and would be able to sit, stand at his option during the work day. Based on—uh—the above assumption, are there any unskilled jobs that the claimant could perform?

(Tr. 165–166; emphasis added). The factors, current rules and regulations alluded to by the ALJ could only be the "grids." Where both exertional and non-exertional impairments are present, case law does not permit the Secretary to use the "grids" to determine disability, and since the front door to the "grids" is closed by controlling case law, this court will not permit the Secretary to come in the back door by injecting the "grids" conclusions in the examination of a VE. The question, as proposed, is found further to be faulty, because such assumed findings concerning Van Huss' impairments as the question contains, seem to be afterthought, coming after the assumptions of the ultimate fact that Van Huss has the residual functional capacity to perform light work and that the regulations direct a conclusion that he is not disabled. The question is found further to be faulty

because it is based on an assumption that is contrary to the evidence. Even though the question is termed in the light work category, the VE described jobs that would not accurately be classified as sedentary. The record is devoid of any jobs in the light category coming from the VE's testimony. The VE made it unmistakably clear that the jobs he found plaintiff could perform were sedentary when he said, "So even though the assumption was light work,— uh—*these jobs would actually more accurately be classified as sedentary"* (Tr. 167– 168; emphasis added). The medical evidence clearly establishes that the plaintiff can sit for no more than four hours in a regular eight-hour workday. This evidence is not in dispute and comes from the Secretary's examining orthopedic surgeon, Dr. Robert T. Strang. (*See* Tr. 114). The Department of Labor's Definition of Occupational Terms defines sedentary work as follows:

> *Sedentary work implies a capacity to sit for at least 6 hours in an 8 hour work day* and to lift up to 10 pounds maximum. The ability to walk and stand up to approximately ⅓ of the work day (2–3 hours per day per 8 hour day) is also implied in sedentary work. (emphasis added).

Due to the fact that plaintiff is unable to sit for at least six hours in an eight-hour work day, and can only sit for four hours, there is not "substantial evidence" to support a finding, by the ALJ and Appeals Council, that Van Huss has the residual functional capacity to perform either sedentary or light work. Additionally, it is inconceivable that a VE under contract to the Secretary would have failed to come up with some jobs that a claimant can perform when subjected to the type questioning that the ALJ resorted to in the case under consideration. There is not "substantial evidence" to support the Secretary's findings that Van Huss can perform light or sedentary work.

### III

### PAIN

■ The Court's review of the evidence and the ALJ's second decision in this case,

which became the Secretary's final decision when adopted by the Appeals Council, indicates that the ALJ relied, in large part, on his own observations of the plaintiff, during a short period of time, at the ALJ's hearing, to evaluate claimant's disability with particular reference to pain, discomfort, and ability to function. The ALJ, in his opinion, observed, *inter alia:*

> While claimant may experience some pain and discomfort, there are no significant signs or circumstances present in this case to indicate that they are of such severity as to preclude him from engaging in any substantial gainful activity. *Claimant exhibited no significant observable physical signs which could be related to severe pain or discomfort. His ability to get about on a regular basis and otherwise function physically appears generally unimpeded. At the hearing, the claimant did not appear to be preoccupied with personal discomfort. He answered questions alertly and his thoughts did not wander. His general appearance suggested no obvious abnormalities. The Administrative Law Judge, therefore, does not find the claimant's allegations of pain and discomfort to be supported by the preponderance of the objective medical and other evidence of record.*

(Tr. 131; emphasis added). This analysis of the disabling effect of claimant's subjective pain and/or discomfort is closely akin to the analysis made by the ALJ in the case of *Tyler v. Weinberger,* 409 F.Supp. 776 (E.D. Va.1976). The Eastern District of Virginia Court held in *Tyler* that it was impermissible for an ALJ to make a determination of disability on the basis of what was designated by it to be a "sit and squirm" index, based on the ALJ's personal observations of the claimant during the course of the ALJ's hearing. The ALJ should analyze the plaintiff's impairments in the light of the medical evidence of record, coming from expert witnesses, rather than rely on his own observations and expertise, unless it can be reflected in the record that he is possessed of such. The overwhelming preponderance of the evidence, including Van Huss' testimony, at the ALJ's hearings establishes that he has severe recurrent pain that frequently lasts for up to a week when he over-exerts himself, and which the court is satisfied is disabling when considered along with his other well-established impairments.[3] Van Huss' testimony concerning pain is corroborated by numerous x-rays, clinical examinations by Dr. Heiman, other orthopedic doctors, and the Secretary's consultative orthopedic specialist, Dr. Robert T. Strang. The Secretary's findings to the contrary are supported only by the ALJ's observations and personal opinions, and not by "substantial evidence."

In summary, the Secretary's findings that Van Huss can engage in light and sedentary work and that he does not have a severe impairment or combination of impairments which render him unable to engage in substantial gainful activity are not supported by "substantial evidence." While the court could, again, remand this case to the Secretary for further and more proper adjudication, so to do would be unconscionable, because Van Huss has clearly proven, by a preponderance of the evidence, that he has been disabled, as he contends, since May 6, 1978, when he had an automobile accident in which he incurred serious, severe, and disabling injuries.[4]

---

**3.** [Where] Myers' (here Van Huss') pain had a specific physical cause, and none of her (his) doctors ... reported that she (he) could do her (his) former work, the Secretary should consider the extent to which pain affects her (his) ability to function. This is so even though the intensity of the pain was shown only by subjective evidence. *Myers v. Califano,* 611 F.2d 980 (4th Cir.1980). The cause of Van Huss' pain is well-documented by objective findings; and the ALJ found him unable to do his former work.

**4.** For the Appeals Council or ALJ to proceed in a case such as this one without specific evidence of alternate employability, as might be given by a VE, is to invite reversal. *Taylor v. Weinberger,* 512 F.2d 664, 669 (4th Cir.1975). *See also, Johnson v. Califano,* 593 F.2d 1 (4th Cir.1979). In *Van Huss'* case there was vocational evidence of alternate employability, but same was improperly elicited from the VE by the ALJ. *See* II, *supra,* at Page 165.

The court is constrained to conclude that the Secretary's final decision is not supported by "substantial evidence." Defendant's motion for summary judgment must be denied. Upon the finding that plaintiff has met the burden of proof as prescribed by and pursuant to the Act, judgment will be entered for plaintiff. The final decision of the Secretary will be reversed and the case remanded for the establishment of proper benefits. An appropriate judgment and order will be entered this day.

The clerk is directed to send certified copies of this Opinion to the counsel of record.