**Richard J. WOODS, Plaintiff,**

v.

**Margaret M. HECKLER Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 81–0216–A.**

United States District Court, W.D. Virginia, Abingdon Division.

Jan. 8, 1986.

---

Slaughter, Jackson, Cooper & Watson, Bristol, Tenn., David L. Scyphers, Abingdon, Va., for plaintiff.

E. Montgomery Tucker, Asst. U.S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The plaintiff, Richard J. Woods, has filed this action challenging the final decision of the Secretary of Health and Human Services denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 *et seq.* Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). As reflected by the memoranda and argument submitted by the parties, the issues before this court are whether the Secretary's final decision is supported by "substantial evidence," and if it is not, whether plaintiff has met the burden of proof as prescribed by and pursuant to the Act. Stated briefly, "substantial evidence" has been defined as such relevant evidence, considering the record as a whole, as might be found ade-

quate to support a conclusion by a reasonable mind. *Richardson v. Perales,* 402 U.S. 389, 400, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971).

In an opinion eventually adopted as the final decision of the Secretary, an Administrative Law Judge (ALJ) found that plaintiff was not under such a disability so as to establish entitlement to benefits under either of the Federal Programs. While the ALJ found that plaintiff suffers from several impairments, the ALJ concluded that the conditions are not so severe, either singly or in combination, so as to constitute or contribute to a disability within the meaning of the Act. *See* 42 U.S.C. § 423 (disability insurance) and 42 U.S.C. § 1382c(a)(3) (supplemental security income).

Woods filed applications for a period of disability and disability insurance benefits under Title II of the Act, and for supplemental security income benefits under Title XVI of the Act on April 10, 1980. He was born on May 24, 1951, and was 27 years of age at the time of his applications for benefits under Titles II and XVI of the Act. He was 29 years of age at the time the ALJ rendered his decision on February 18, 1981.[1] Woods' past relevant employment was as a construction worker, self-service grocery clerk, welder and auto body repairman. The ALJ concluded that he was unable to engage in any of his past relevant

employment due to the severe musculoskeletal impairment of his back, spine and left ankle. He alleged in his Title II application that he had become unable to engage in any substantial gainful activity in December of 1979 due to an impairment of his back resulting from three compressed vertibrae (sic). Tr. 56. The record reflects that plaintiff was injured in an industrial accident[2] on September 2, 1970. He was treated by Dr. Charles Bray, an orthopedic surgeon, for his industrial accident injuries. Dr. Bray initially saw him from the time of the injuries until sometime in 1974. Tr. 120. Woods became able to engage in gainful activity sometime early in the year 1972, because the record reflects that he had four quarters of insured status coverage during 1972 and that he continued to have full insured status coverage through the third quarter of 1979.[3] The record does not reflect that he has engaged in any gainful activity since the fourth quarter of 1979 or more specifically since his date of alleged onset of disability in December of 1979. Tr. 69.

The court's review of the record reflects that the ALJ committed at least five errors in his adjudication decision in the case *sub judice,* namely: 1. He made an inappropriate use of the "grids" or Medical Vocational Guidelines set out in the Secretary's regulations in finding Woods not to be disabled[4]; 2. He failed to fairly and properly

1. Woods' being a younger individual was perhaps the principal reason for the disallowance of benefits in his case.

2. Woods incurred a fracture of the talus (the ankle bone), a fracture of the 7th and 8th thoracic vertebrae and the 1st lumbar vertebra. *See* Tr. 131.

3. Woods' earning record also reflects that he had earnings between 1972 and 1979 that varied from $3,007.89 in 1972 to $12,371.32 in 1975, $10,508.13 in 1977, $16,758.29 in 1978, to a low of $1,006.66 in 1979 (the year in which he alleged an onset of disability in December). *See* Tr. 69.

4. This court, in a memorandum opinion and order entered on February 1, 1982, remanded this case to the Secretary for inappropriate use of the "grids," and suggested that the Secretary must come forward with particularized proof of

the existence of alternate employment Woods could perform given the evidence in the case. By some quirk the Secretary appealed this interlocutory order, and the appeal was stayed by the Court of Appeals for the Fourth Circuit pending the decision of the Supreme Court in the case of *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). *Campbell* was used as the Court's vehicle to adjudicate the essential validity of the "grids." This court was one of the first district courts in the nation to uphold the validity of the "grids" in the case of *Phillips v. Harris,* 488 F.Supp. 1161 (W.D.Va.1980). After the court's decision in *Campbell,* the Fourth Circuit Court remanded this interlocutory appeal back to this court for its consideration in the light of *Heckler v. Campbell, supra.* This court, for cogent reasons set out herein, holds to its February 1, 1982 opinion and order that the Secretary's use of the "grids" in this case is inappropriate. It is of passing interest to note

adjudicate the pain issue; 3. He resorted to long discredited "sit and squirm" jurisprudence in assessing Woods' credibility and disability; 4. He failed to give proper weight to the evidence of Woods' various treating physicians and relied instead on the opinion of a "one-shot" consultative doctor engaged by the Secretary; and 5. He failed to properly consider the synergistic effect of Woods' combination of impairments, including the chronic and unrelenting pain attendant thereto.

## I.

### *Inappropriate Use of "Grids"*

■ The ALJ relied on a straightforward application of the Medical Vocational Guidelines set out in 20 C.F.R., Pt. 404, Subpt. P, Appendix 2 to find Woods not disabled. The ALJ used the sequential evaluation of disability provided in 20 C.F.R. §§ 404.1520 and 416.920 to find that: 1. Woods was not presently working; 2. That he had a severe impairment; 3. That he did not have an impairment listed in Appendix 1 to Pt. 404, Subpt. P; 4. That he was unable to engage in his past relevant employment in the construction field; but 5. That by taking administrative notice under the "grids" in Appendix 2 to Pt. 404, Subpt. P there was alternate employment in the national economy that Woods could perform. The ALJ's use of the "grids" in Woods' case is fatally flawed, because there is not "substantial evidence" in the record to support the ALJ's conclusion that, "The claimant is suffering from no non-exertional limitation of (sic) combination of limitations which would significantly affect his residual functional capaci-

ty...." Tr. 17–18. This conclusion is totally contrary to, and at odds with, all of the medical evidence of record because, without exception, each doctor who expressed any opinion about Woods opined that he suffered from chronic, and unrelenting pain. The issue of pain will be discussed at greater length in the following Part II. Not only is the ALJ's conclusion concerning Woods' lack of a non-exertional impairment unsupported by any evidence in the record, but the unquestionable existence of pain of the nature and to the extent shown in this case precludes the straightforward use of the "grids" under the Secretary's regulations. *See* 20 C.F.R., Pt. 404, Subpt. P, Appendix 2, § 200.00(e).[5] That pain is a non-exertional sensory impairment is not subject to question in the Fourth Circuit or this Court. *Hammond v. Heckler,* 765 F.2d 424 (4th Cir.1985); *Van Huss v. Heckler,* 572 F.Supp. 160 (W.D.Va. 1983).[6] The ALJ erred in making a straightforward application of the "grids" to Woods' profile to direct a conclusion that he was not disabled.

## II.

### *Pain*

■ The ALJ failed to give proper weight to the overwhelming, yea undisputed, evidence of Woods' severe, chronic, persistent and unrelenting pain, which very nearly established his disability and entitlement to benefits, standing alone, and which in combination with his severe musculoskeletal problems (which were the source of his pain) did establish same. Pain of sufficient severity can be disabling in and of itself.[7]

that, subsequent to the granting of its stay in this case, the Fourth Circuit Court in the case of *Guthrie v. Schweiker,* 718 F.2d 104 (4th Cir. 1983) authoritatively decided that a remand order in a social security case is a non-appealable interlocutory order, a conclusion which this court had reached prior to its February 1, 1982 order and opinion herein.

**5.** 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 200.00(e) says, in part: "Since the rules are predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs, they may not be

fully applicable where the nature of an individual's impairment does not result in such limitations, e.g., ... sensory...."

**6.** *Van Huss* was cited with approval by the Fourth Circuit Court in *Hammond.*

**7.** This finding is in conformity with the standard for evaluating pain now statutorily provided in the Social Security Disability Benefits Reform Act of 1984, Pub.L.No. 98–460, § 3 (enacted October 9, 1984). Section 3(a)(1), which amends section 223(d)(5) of the Social Security Act, 42 U.S.C. § 423(d)(5) states:

*Myers v. Califano,* 611 F.2d 980 (4th Cir. 1980); *Van Huss v. Heckler, supra.* Objective evidence of pain was submitted by Doctors Bray, Tr. 120 and Tr. 131; Cupp, Tr. 122–123, Tr. 131 and Tr. 133; Cellabos, Tr. 127 and Tr. 143; Gibson, Tr. 139 (Dr. Gibson is a radiologist who did a myelogram which was positive); Derian, Tr. 153–154; Henderson, Tr. 157–161; and Weaver, Tr. 164. It is worthy of note that no one trained in the healing arts even remotely suggested that Woods did not have an abundance of objective findings to cause his subjective complaints of pain; only the ALJ, whose expertise is not documented in the record, opined that plaintiff's subjective complaints of pain were not supported by objective medical findings. The objective evidence supporting plaintiff's subjective complaints of pain is overwhelming and undisputed. The severity and chronicity of Woods' pain is severe enough in its nature to be disabling in and of itself, or, if not, in combination with his well-documented musculoskeletal impairment of his back and spine it contributes to his total disability.

### III.

### *Sit and Squirm Jurisprudence*

■ The ALJ, in arriving at his decision that Woods was not disabled, seemed to rely in substantial part on his own expertise and his observations of plaintiff at the ALJ's hearing to determine that Woods was not disabled. The ALJ in his decision observed, *inter alia,* as follows:

> While claimant may experience some pain and discomfort, *there are no significant signs or circumstances present* in this case to indicate that they are of such severity as to preclude him from engag-

ing in any substantial gainful activity. *Claimant exhibited no significant observable physical signs which could be related to severe pain or discomfort.* His ability to get about on a regular basis and otherwise function physically appears generally unimpeded. *At the hearing, the claimant did not appear to be preoccupied with personal discomfort. He answered questions alertly and his thoughts did not wander. His general appearance suggested no obvious abnormalities. The Administrative Law Judge, therefore, does not find the claimant's allegations of pain and discomfort to be supported by the preponderance of the objective medical and other evidence of record.*

(Tr. 17; emphasis added). This type of "sit and squirm" jurisprudence has been discredited in this Circuit and in this Court. *Hicks v. Heckler,* 756 F.2d 1022 (4th Cir. 1985); *Van Huss v. Heckler, supra.* The ALJ seemed to rely in large measure upon his own opinion and observations to discount the overwhelming weight of the evidence, especially concerning the pain issue and its disabling effect. The ALJ's observations and opinions are not entitled to any weight when they are, as in the case *sub judice,* unsupported by but contrary to all the evidence of record. There is no "substantial evidence" in the record to support the ALJ's observations and opinions concerning the severity of Woods' chronic and severe pain.

### IV.

### *Failure to Give Proper Weight to Treating Physician*

■ The ALJ's decision is flawed because of his failure to give proper weight

---

An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability *as defined in this section;* there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, psyiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this

paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

to the evidence and opinion of his principal treating physician, Dr. Horace B. Cupp, Jr., a neurosurgeon. Woods initially was seen and treated by Dr. Charles B. Bray for the injuries received in his industrial accident on September 2, 1970. After having returned to gainful employment in 1972, Woods had recurring difficulty and again returned to see Dr. Bray in July of 1979 (some 5 or 6 months before his alleged onset date of disability in December of 1979). By letter of January 9, 1980 (Tr. 121), Dr. Bray recommended that Woods needed to be seen by a neurosurgeon (Dr. Bray did not see Woods after January 7, 1980, but did report on May 21, 1980, that plaintiff was seen by Dr. Horrace (sic) Cupp, a neurosurgeon on February 19, 1980. Tr. 131). Dr. Cupp became the principal treating physician after he saw, examined, treated and hospitalized Woods. Dr. Cupp has four medical reports and summaries of one period of hospitalization in the record. *See* Tr. 122–123; Tr. 124; Tr. 135; Tr. 147 for medical reports and Tr. 136–139 for hospital records, including report of positive myelogram. Dr. Cupp, in a letter bearing date of August 8, 1980, opined that "he remains disabled at this time." Tr. 147. This opinion is in accord with all of the medical evidence of record save that of Dr. Henderson, who saw Woods in consultation for the Secretary at the ALJ's request on one visit. Tr. 157–161. The ALJ, in developing the claim, never elicited any opinion from Dr. Cupp as to plaintiff's residual functional capacity, nor did the ALJ ask him to furnish a physical capacities evaluation; this failure on the ALJ's part is contrary to the Secretary's regulations, which recognize the treating physician as the primary and best source of medical evidence. *See generally,* 20 C.F.R. §§ 404.1512–1517. Controlling case law also treats the evidence of treating physicians as entitled to greater weight than other examining or non-examining sources. *Mitchell v. Schweiker,* 699 F.2d 185, 187 (4th Cir.1983); *Oppenheim v. Finch,* 495 F.2d 396, 398 (4th Cir.1974); *Vitek v.*

*Finch,* 438 F.2d 1157, 1160 (4th Cir.1971). In lieu of requesting additional medical information from Dr. Cupp, plaintiff's treating physician, the ALJ, in his words:

> *In order to properly evaluate claimant's orthopedic condition, the Administrative Law Judge requested claimant receive a post-hearing orthopedic evaluation. Accordingly, on December 18, 1980, claimant was seen by Dr. Walter T. Henderson, an orthopedic surgeon.* Essentially, Dr. Henderson's findings corresponded with those of Drs. Cupp and Derian. *Dr. Henderson indicated that the compression fracture at the 1st lumbar vertebra was contributing to a weak and painful back.* Fractures in the thoracic area did not, in Dr. Henderson's opinion, seem to be of any great consequence. In completing a physical capacities evaluation form, Dr. Henderson found claimant capable of performing some forms of light work activity and sedentary work without restriction.

(Tr. 16; emphasis added). The court observes that the record reflects that at the time Dr. Henderson made his "one-shot" consultative examination pursuant to the ALJ's request [8] there was medical evidence of record from orthopedic surgeon Charles B. Bray, general surgeon R.B. Cellabos, radiologist J.W. Gibson, orthopedic surgeon Paul S. Derian and neurosurgeon Horace B. Cupp, Jr., all of which was in substantial agreement as to the nature and cause of Woods' subjective complaints of pain and his objective musculoskeletal impairments. The ALJ, as shown by the following, placed principal reliance upon the evidence of Dr. Henderson whose findings were essentially the same as those of all the other doctors:

> *The undersigned places great weight of evidence on the findings and opinions of Dr. Henderson, who examined the claimant on December 18, 1980, and notes that his findings and opinions are not inconsistent with those of Dr. Derian, Cupp and Bray.*

---

**8.** The ALJ apparently requested an orthopedic examination because of Dr. Cupp's observation that a further orthopedic consultation was needed. *See* Tr. 147.

**1456**

(Tr. 16; emphasis added). In the light of all the other medical evidence of record, Dr. Henderson's evidence resulting from a "one-shot" consultative examination at the request of the Secretary is found not to be substantial.

### V.

### *Combination of Impairments*

 The ALJ found the obvious in holding that Woods was unable to engage in his past relevant work as a construction worker or other relevant past employment. This finding alone established a prima facie case of disability for Woods, and it became incumbent upon the Secretary to come forward with evidence of the existence of alternate employment. *Hall v. Harris*, 658 F.2d 260 (4th Cir.1981). As discussed in Part I above, the "grids" could not be used for that purpose in this case because of Woods' well-established and undisputed non-exertional pain impairment and because the evidence that the ALJ placed principal reliance on for his finding that plaintiff could perform some forms of light work and sedentary work without restriction. The ALJ gave a preclusive effect to the physical capacities evaluation (PCE) form filled out by Dr. Henderson. *See* Tr. 161 for Dr. Henderson's PCE. A correct interpretation of the Henderson PCE establishes the second reason that the ALJ's use of the "grids" was inappropriate in the case *sub judice*, because his finding as shown thereon indicates that Woods is unable to perform a full-range of either light or sedentary work because he does not have bilateral pedal dexterity and cannot operate foot controls, pedals, etc. with both feet. Under § 201.00(h) of Pt. 404, Subpt

P, Appendix 2, the inability to engage in a full-range of sedentary work as in Woods' case, makes a finding of disabled appropriate.[9] A finding of disability in this case is therefore appropriate under the evidence, controlling case precedent and the Secretary's regulations. The court specifically finds that Woods is disabled due to his combination of severe musculoskeletal impairments resulting from the industrial accident on September 2, 1970 and the chronic and unrelenting pain attendant thereto and has been since at least December of 1979.

The medical evidence clearly establishes that Woods is disabled due to his combination of impairments as discussed above; that he is not able to engage in his past relevant employment as a construction worker or other relevant employment; that he is not able to engage in any substantial gainful activity due to his inability to engage in a full-range of sedentary work; and that he is entitled to a period of disability and to disability insurance benefits under Title II of the Act and to supplemental security income under Title XVI of the Act, if he meets the remaining statutory criteria.

The court is constrained to conclude that the Secretary's final decision is not supported by "substantial evidence." Defendant's motion for summary judgment must be denied. Upon the finding that plaintiff has met the burden of proof as prescribed by and pursuant to the Act, judgment will be entered for plaintiff. The final decision of the Secretary will be reversed and the case remanded for the establishment of

9. 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 201.-00(h) says, in part: "However, a finding of disabled is not precluded for those individual under age 45 who do not meet all of the criteria of a specific rule and who do not have the ability *to perform a full range of sedentary work.* The following examples are illustrative: Example 1: An individual under age 45 with a high school education can no longer do past work and is restricted to unskilled sedentary jobs because of a severe medically determinable cardiovascular impairment (which does not meet or equal the listings in Appendix 1). A permanent injury of the right hand (Woods' left foot) limits the individual to sedentary jobs which do not require bilateral manual dexterity. None of the rules in Appendix 2 are applicable to this particular set of facts, because this individual cannot perform the full range of work defined as sedentary. Since the inability to perform jobs requiring bilateral manual dexterity (Woods lacks bilateral pedal dexterity) significantly compromises the only range of work for which the individual is otherwise qualified (i.e., sedentary), *a finding of disabled would be appropriate.*" (Emphasis added).

proper benefits. An appropriate judgment and order will be entered this day.